UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America,

    v.                                            Case No. 18-CR-101-SM
                                                Opinion No. 2019 DNH 186

Bernard Lindsey,
    Defendant

## **O R D E R**

Defendant moves for judgment of acquittal, or a new trial, on grounds that the evidence presented, even when viewed in the light most favorable to the government, is insufficient to support the jury's guilty verdicts. Alternatively, he asserts that the weight of the evidence is so inconsistent with those verdicts that it is clear that the jury reached an erroneous result, warranting a new trial. See Fed. R. Crim. P. 29 and 33. The government objects.

## **Background**

Defendant was on state parole when, on April 16, 2018, at about 2:15 in the afternoon, probation officers made an unannounced inspection of his apartment. A probation officer noticed that defendant's car was parked outside, suggesting that he was at home. The officer approached the door and listened

for activity inside. He heard sounds of movement and knocked on the door, announcing his presence. No one answered. He continued to knock and announce without effect. He then heard a cellphone "chime" and stated that he could hear the cellphone so he knew someone was inside. Still, no one responded. The officer persisted and, after two or three minutes, the defendant finally opened the door and the officers went in.

Defendant was not alone. Seated on a futon was another man, Bryson London. On the futon, near London - but not in his physical possession - was a black plastic case that was partially covered by clothing. Later, it was discovered that the case contained drugs and related items indicative of drug trafficking: 16 grams of methamphetamine in a plastic baggie; 34 grams of cocaine in three plastic baggies; 23 grams of fentanyl in two plastic baggies; a scale; a weight; a plastic knife with white residue on it; a metal spoon; and cut up pieces of aluminum foil. Defendant contends that the evidence was insufficient to establish, beyond a reasonable doubt, that the case and its contents belonged to him. The court disagrees.

A rational and reasonable jury could have found from the evidence presented that defendant lived alone; he rented the apartment over which he maintained dominion and control; and,

although he had had difficulty paying his rent just a few weeks earlier, defendant was found with $3,643 in cash in his pocket. Defendant had a job that paid him $12.00 per hour. He explained to the officer that the substantial amount of cash was from a tax refund and he kept it on his person because he did not favor using banks. Yet, defendant did have a bank account and, while the bank's records disclosed that he had received a tax refund in the amount of $5,838 on February 22, 2018, the records also disclosed that he withdrew $4,000 the next day. That defendant was unable to pay his rent in early April appeared inconsistent with his claim that he still had a substantial amount of cash from that refund on April 16th. Rather, circumstances suggested that defendant may have come into possession of that cash fairly recently.

Additionally, materials typically used in drug trafficking were found in defendant's apartment. Execution of a search warrant revealed protective masks, protective gloves, and inositol powder (used as a cutting agent for cocaine) - all located together in defendant's bedroom. Typical drug packaging materials were also found in the kitchen: Ziploc quart-sized freezer bags; Glad sandwich bags; and two boxes of aluminum foil. The drugs found in the black plastic case were packaged in the very same materials.

3

The evidence also established that defendant possessed two similar cellphones. One phone stored messages showing that defendant was engaged in drug trafficking, and that his customers generally purchased 1/2 to 1 gram quantities. The phones also included messages between the defendant and London, from which the jury could fairly conclude both that defendant was a drug dealer and that London was his customer.

Taking all of the evidence in the light most favorable to the verdicts, a reasonable and rational jury could find beyond a reasonable doubt that the defendant was dealing in drugs; that London was in defendant's apartment as a customer; that the drugs found in the black plastic case in defendant's apartment belonged to defendant; that defendant delayed opening the door because he was aware of his guilt and feared the likely imminent discovery of those drugs and related paraphernalia; and that the cash found on the defendant represented drug proceeds, not a tax refund.

The jury was certainly free to weigh the evidence and reject the defense that it was London, not defendant, who possessed the drugs with the intent to distribute them. London's physical proximity to the black case on the futon (but not actual possession of it) is, of course, consistent with an

inference that the case and its contents belonged to London. But, that inference is weak and the jury was not required to accept it.  And, that possibility did not require the jury to have a reasonable doubt about defendant's guilt.  The jury could find from all the evidence, beyond a reasonable doubt, that the black case was defendant's and it was part and parcel of defendant's drug trafficking activity.

Ordinarily this would not be a difficult or complicated matter, and the motion for judgment of acquittal or for a new trial would have been promptly denied.  But, as raised by defense counsel in his supporting memorandum, the recent decision by the court of appeals in United States v. Pothier, 919 F.3d 143 (1st Cir. 2019), gives some pause.  That opinion might be read to suggest that, in a circumstantial evidence case, a theory of innocence consistent with the evidence requires a jury to have a reasonable doubt, since rejection of the defense would necessarily be premised on mere speculation. Pothier, however, turns on a fact-intensive analysis, and rests on the absence of sufficient evidence in that case tying the defendant to the charged contraband: child pornography found on a laptop computer that, although belonging to the defendant, was not password protected, and was left in a shared residence to which two other people had complete access.  There, too, the

defendant delayed opening his door, despite police demands, for an extended period of time. The court noted, however, that the laptop was not hidden or destroyed in the interim, and "scrubbing" software present on the laptop was not run – suggesting that the defendant did not know the unlawful pornography had been downloaded to the laptop. The government in that case offered very little evidence of defendant's culpable knowledge, beyond his ownership of the laptop. Under those circumstances, the court found that a jury would necessarily have to take a speculative leap to find any one of the three potentially guilty parties responsible for the charged offense. Each of the three residents had access and opportunity to download the unlawful images; those images were stored in "inconspicuous folders" (not readily apparent to a casual user, including, at least potentially, the defendant); and no other relevant evidence pointing to the defendant as the culpable party rather than the two other residents was introduced at trial.

This case is quite different. Here, as noted above, defendant was the sole tenant and occupant of the apartment – it was his to control and maintain. The cocaine cutting powder and drug packaging materials found in his apartment – packaging materials identical to those used to package the drugs found in

6

the black case - would support a jury's conclusion that defendant was engaged in drug trafficking.  The cellphone messages supported the conclusion that London was present as a customer of defendant's, rather than defendant's supplier.  Defendant's substantial delay in opening the door for the probation officer bespeaks a guilty mind.  And, the partially obscured black case, although physically closer to London and partially covered by clothing – perhaps hastily tossed there before opening the door - suggests an effort to conceal.  The jury could have supportably found that the mere closer proximity of London to the black case on defendant's futon did not point away from defendant and at London in any significant way.

Taking all of the evidence presented in the light most favorable to the verdicts, a rational and reasonable jury could have found, beyond a reasonable doubt, that the government carried its burden to prove each essential element of the possession with intent to distribute crimes alleged in Counts I and II of the indictment.  For the reasons given, as well as those argued in the government's memorandum in opposition, the motion for judgment of acquittal or a new trial (document no. 55) is, accordingly, DENIED.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2019

cc: Cam T. Le, AUSA
    Georgiana L. Konesky, AUSA
    Benjamin L. Falkner, Esq.